Nathan E. Shafroth (Bar No. 232505)
nshafroth@cov.com
Raymond G. Lu (Bar No. 324709)
COVINGTON & BURLING LLP
Salesforce Tower, 415 Mission Street
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

Rebecca G. Van Tassell (Bar No. 310909)
rvantassell@cov.com
COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749

Attorneys for Defendant
MCKESSON CORPORATION

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

CITY OF SANTA ANA; and THE
PEOPLE OF THE STATE OF
CALIFORNIA, by and through Santa Ana
City Attorney Sonia R. Carvalho,

        Plaintiffs,

    v.

PURDUE PHARMA L.P.; PURDUE
PHARMA INC.; THE PURDUE
FREDERICK COMPANY; RICHARD S.
SACKLER, an individual and as trustee for
TRUST FOR THE BENEFIT OF
MEMBERS OF THE RAYMOND
SACKLER FAMILY; JONATHAN D.
SACKLER, an individual and as trustee for
TRUST FOR THE BENEFIT OF
MEMBERS OF THE RAYMOND
SACKLER FAMILY; MORTIMER D.A.
SACKLER, an individual; KATHE A.
SACKLER, an individual; IRENE
SACKLER LEFCOURT, an individual;

Civil Case No.: _____

**NOTICE OF REMOVAL**

BEVERLY SACKLER, an individual and
as trustee for TRUST FOR THE BENEFIT
OF MEMBERS OF THE RAYMOND
SACKLER FAMILY; THERESA
SACKLER, an individual; DAVID A.
SACKLER, an individual; CEPHALON,
INC.; TEVA PHARMACEUTICAL
INDUSTRIES, LTD.; TEVA
PHARMACEUTICALS USA, INC.;
JANSSEN PHARMACEUTICALS, INC.;
JOHNSON & JOHNSON; ORTHO-
MCNEIL-JANSSEN
PHARMACEUTICALS, INC.; JANSSEN
PHARMACEUTICA, INC.; ENDO
HEALTH SOLUTIONS INC.; ENDO
PHARMACEUTICALS INC.; ACTAVIS
PLC; WATSON PHARMACEUTICALS,
INC.; WATSON LABORATORIES, INC.;
ACTAVIS PHARMA, INC.; ACTAVIS
LLC; ALLERGAN PLC; ALLERGAN,
INC.; ALLERGAN USA, INC.; INSYS
THERAPEUTICS, INC.;
MALLINCKRODT, PLC;
MALLINCKRODT, LLC; CARDINAL
HEALTH, INC.;
AMERISOURCEBERGEN
CORPORATION; MCKESSON
CORPORATION; and DOES 1
THROUGH 100, inclusive,

Defendants.

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendant McKesson Corporation ("McKesson") has removed the above-captioned action from the Superior Court of the State of California for the County of San Francisco to the United States District Court for the Northern District of California. As grounds for removal, McKesson states:

**I.      Nature of Removed Action**

1.      On March 28, 2019, the City of Santa Ana; and the People of the State of California, by and through Santa Ana City Attorney Sonia R. Carvalho, ("Plaintiff"), filed this action in the Superior Court of the State of California for the County of San Francisco. The court designated the case CGC-19-574872.

2.      The Complaint names four discrete groups of defendants.

3.      The first group of defendants consists of Purdue Pharma L.P.; Purdue Pharma Inc.; the Purdue Frederick Company Inc.; Cephalon, Inc.; Teva Pharmaceuticals USA, Inc.; Teva Pharmaceutical Industries Ltd. (incorrectly named as "Teva Pharmaceutical Industries, Ltd." in the Complaint); Janssen Pharmaceuticals, Inc.; Johnson & Johnson; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Allergan plc f/k/a Actavis plc; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Allergan, Inc.; Allergan, USA, Inc.; Watson Laboratories, Inc.; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Actavis LLC; Mallinckrodt LLC; Mallinckrodt plc; and Insys Therapeutics, Inc. (collectively, "Manufacturer Defendants").

4.      The second group of defendants consists of Richard S. Sackler, as an individual and in his alleged capacity as a trustee of the alleged "Trust for the Benefit of Members of the Raymond Sackler Family"; Jonathan D. Sackler, as an individual and in his alleged capacity as a trustee of the alleged "Trust for the Benefit of Members of the Raymond Sackler Family"; Mortimer D.A. Sackler; Kathe A. Sackler; Ilene Sackler Lefcourt; Beverly Sackler, as an individual and in her alleged capacity as a trustee of the alleged "Trust for the Benefit of Members of the Raymond Sackler Family"; Theresa Sackler; and David A. Sackler (collectively, "Sackler Defendants").

5.      The third group of defendants consists of McKesson; Cardinal Health, Inc.; and AmerisourceBergen Corporation (collectively, "Distributor Defendants").

6.      The fourth group of defendants consists of entities whose true names and capacities are not yet known to Plaintiff (collectively, "Doe Defendants").

7.      The Complaint asserts six counts against McKesson and the other Distributor Defendants: public nuisance under Cal. Civ. Code §§ 3479-3480 (Count I); fraud (Count II); negligence (Count III); unjust enrichment (Count IV); civil conspiracy (Count V); and false advertising under Cal. Bus. & Prof. Code § 17500 (Count VI). *See* Compl. ¶¶ 360-476.

8.      Plaintiff pleads, among other things, that Distributor Defendants "owed [] a duty to exercise reasonable care in the sale and distribution of opioids," and that Distributor Defendants "breached that duty in their failure to prevent diversion of prescription opioids and in their refusal to report and halt suspicious orders." Compl. ¶ 209. Similarly, Plaintiff pleads that Distributor Defendants "fail[e]d to effectively monitor for suspicious orders, report suspicious orders, and/or stop shipment of suspicious orders." *Id.* ¶ 373; *see also id.* ¶ 444 (Distributor Defendants "unlawfully failed to act to prevent diversion and failed to monitor for, report, and prevent suspicious orders of opioids.").

9.      Because the duties governing reporting and shipping "suspicious" opioid orders arise from the federal Controlled Substances Act ("CSA") and its implementing regulations, alleged violations of federal law form the basis for Plaintiff's claims.

10.      On April 17, 2019, Distributor Defendants, including McKesson, filed a joint stipulation to extend the time to respond to the Complaint through June 28, 2019.

11.      McKesson has not responded to the Complaint in state court.

12.      On December 5, 2017, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) and transferred opioid-related actions to Judge Dan Aaron Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407. *See In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (J.P.M.L. Dec. 5, 2017), ECF No. 328. Plaintiff's action is one of hundreds of similar actions

nationwide, including over 1,800 opioid-related actions that are pending in the MDL, including actions removed to this Court.[1]

13.     McKesson intends to tag this case immediately for transfer to the MDL.

14.     A copy of the state court docket sheet is attached as **Exhibit A**. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served on McKesson in the state court action are attached as **Exhibit B**.

## II.     Timeliness of Removal

15.     McKesson was served with the Complaint on March 28, 2019.

16.     In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of service of Plaintiff's Complaint. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

17.     "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(C).

## III.     Propriety of Venue

18.     Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the suit has been pending is in this district.

## IV.     Basis of Removal

19.     Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a federal question under the CSA, 21 U.S.C. §§ 801, *et seq.*

---

[1] *See, e.g.*, *County of San Mateo v. McKesson Corporation, et al.*, No. 3:18-cv-04535*; Robinson Rancheria v. McKesson Corp.*, No. 3:18-cv-02525 (N.D. Cal.); *Hopland Band of Pomo Indians v. McKesson Corp.*, No. 3:18-cv-02528 (N.D. Cal.); *Scotts Valley Band of Pomo Indians v. McKesson Corp.*, No. 3:18-cv-02529 (N.D. Cal.); *Round Valley Indian Tribes v. McKesson Corp.*, No. 3:18-cv-02530 (N.D. Cal.); *Guidiville Rancheria of Calif. v. McKesson Corp.*, No. 3:18-cv-02532 (N.D. Cal.); *Coyote Valley Band of Pomo Indians v. McKesson Corp.*, No. 3:18-cv-02533 (N.D. Cal.); *Consolidated Tribal Health Project, Inc. v. McKesson Corp.*, No. 3:18-cv-02534 (N.D. Cal.); *Center Point, Inc. v. McKesson Corp.*, No. 3:18-cv-02535 (N.D. Cal.); *Big Valley Band of Pomo Indians of the Big Valley Rancheria v. McKesson Corp.*, No. 3:18-cv-02536 (N.D. Cal.); *Big Sandy Rancheria of Western Mono Indians v. McKesson Corp.*, No. 3:18-cv-02537 (N.D. Cal.).

20.    The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

21.    "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

22.    Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc., v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see also Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").[2]

23.    "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013);

---

[2] A defendant need not overcome any artificial presumptions against removal or in favor of remand. In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp. v Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331." 132 S. Ct. 740, 749 (2012) (brackets, citations, and internal quotation marks omitted).

*see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14).

24.     As set forth below, this case meets all four requirements.[3]

25.     Although Plaintiff ostensibly pleads some of its theories of recovery as state law claims, it bases the underlying theory of liability on alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA, *i.e.*, that a portion of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of suspicious orders that defendants allegedly had a duty to identify, report, and then not ship.

26.     The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations. *See* Compl. ¶ 180 (citing 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 823(e) as sources for the "obligation to design and operate a system to disclose . . . suspicious orders of controlled substances and to inform the DEA of suspicious orders when discovered" (quotations omitted)).

27.     The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice. Specifically, DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (DEA, July 3, 2007), as source of DEA's "Shipping Requirement").

---

[3] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiff's underlying claims. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

28.     Plaintiff's theories of liability against McKesson and other Distributor Defendants, as pled in the Complaint, are predicated on allegations that McKesson and Distributor Defendants breached alleged duties under the CSA to implement effective controls to detect and report "suspicious" pharmacy orders for prescription opioids and—crucial to Plaintiff's claims—to refuse to ship such orders to California pharmacies. *See, e.g.*, Compl. ¶ 209.

29.     Specifically, Plaintiff invokes federal law and pleads that McKesson and the other Distributor Defendants violated federal law with, among others, the following allegations:

a.     "Diversion can occur at any point in the opioid supply chain. For example, diversion can occur at the wholesale level of distribution when distributors allow opioids to be lost or stolen in transit, or when distributors fill suspicious orders of opioids from buyers, retailers, or prescribers. Suspicious orders include orders of unusually large size, orders that are disproportionately large in comparison to the population of a community served by the pharmacy, orders that deviate from a normal pattern, and/or orders of unusual frequency."  Compl. ¶¶ 201-02.

b.     "Separately, Defendants also are subject to federal statutory requirements of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* (the "CSA"), and its implementing regulations . . . . Defendants' repeated and prolific violations of these requirements show that they have failed to meet the relevant standard of conduct that society expects of them: the duty to exercise reasonable care in the promotion of prescription opioids." Compl. ¶¶ 211-12.

c.     "Moreover, every person or entity that manufactures, distributes, or dispenses opioids must obtain a registration with the DEA. Registrants at every level of the supply chain must fulfill their obligations under the CSA." Compl. ¶ 215.

d.     "Under the CSA, anyone authorized to handle controlled substances must track shipments. The DEA's Automation of Reports and Consolidation Orders System ("ARCOS") is an automated drug reporting system that records and monitors the flow of Schedule II controlled substances . . . . Each person or entity registered to distribute ARCOS reportable controlled substances, including opioids, must report

each acquisition and distribution transaction to the DEA. *See* 21 U.S.C. § 827; 21 C.F.R. § 1304.33." Compl. ¶ 216.

e.    "On December 27, 2007, the Office of Diversion Control sent a follow-up letter to DEA registrants . . . remind[ing] registrants that suspicious orders must be reported when discovered and monthly transaction reports of excessive purchases did not meet the regulatory criteria for suspicious order reporting. The letter also advised registrants that they must perform an independent analysis of a suspicious order prior to the sale to determine if controlled substances would likely be diverted, and that filing a suspicious order and then completing the sale does not absolve the registrant from legal responsibility." Compl. ¶ 222.

f.    "Defendants have also unlawfully and intentionally distributed opioids or caused opioids to be distributed within and without Santa Ana absent effective controls against diversion. Such conduct was illegal, and proscribed by statute and regulation. Defendants' failures to maintain effective controls against diversion include Defendants' failure to effectively monitor for suspicious orders, report suspicious orders, and/or stop shipment of suspicious orders." Compl.  ¶ 373.

g.    "Defendants had a legal duty to exercise reasonable and ordinary care and skill and in accordance with applicable standards of conduct in advertising, marketing, selling, and distributing opioid products . . . . As described throughout the Complaint, Defendants breached their duties to exercise due care in the business of wholesale distribution of dangerous opioids by failing to monitor for, failing to report, and filling highly suspicious orders time and again." Compl. ¶ 412-13.

h.    "Defendants unlawfully failed to act to prevent diversion and failed to monitor for, report, and prevent suspicious orders of opioids." Compl. ¶ 444.

30.    Critically, Plaintiff does not and cannot identify any state law source for a requirement that wholesale pharmaceutical distributors "halt" or "stop shipments" of suspicious orders of controlled substances from registered pharmacies. Plaintiff's artful pleading cannot overcome its reliance on the alleged violation of this duty to refuse to fill suspicious orders, the sole source for which is the federal

Controlled Substances Act. Thus, Plaintiff's claims against Distributor Defendants, as Plaintiff pleads them, arise under federal law.

31.     None of the California laws or regulations that Plaintiff cites establishes a duty to refuse to fill suspicious orders of prescription drugs. Although California Business and Professions Code section 4169.1 requires distributors to "notify the [B]oard [of Pharmacy] in writing of any suspicious orders of controlled substances," it says nothing about halting or refusing to fill suspicious orders. Similarly, section 4164 merely provides that distributors must report distributions of controlled substances "as determined by the board," or sales data of "dangerous drugs" to pharmacies that primarily service patients of long-term care facilities "[u]pon written, oral, or electronic request by the board." Likewise, California Code of Regulations title 16, section 1782, which requires distributors to report sales of drugs subject to abuse "as designated by the Board for reporting, in excess of amounts to be determined by the Board from time to time," contains no requirement with respect to halting shipment of allegedly suspicious orders.

32.     Plaintiff's theory of liability also relies on an expansive reading of federal law that calls into question an agency determination. Plaintiff alleges not only that Distributor Defendants should have detected and reported discrete suspicious orders by their respective individual pharmacy customers, but that Distributor Defendants should have recognized that the total volume of prescription opioids distributed by all wholesalers to various regions was suspicious or unreasonable. *See, e.g.*, Compl. ¶ 231 ("Each Distributor Defendant knew or should have known that the opioids reaching Santa Ana were not being consumed for medical purposes and that the amount of opioids flowing to Santa Ana was far in excess of what could be consumed for medically necessary purposes."); *id.* ¶ 238 ("The Distributor Defendants were aware of widespread prescription opioid abuse in and around Santa Ana, but, on information and belief, they nevertheless persisted in a pattern of distributing commonly abused and diverted opioids in geographic areas, in such quantities, and with such frequency that they knew or should have known these commonly abused controlled substances were not being prescribed and consumed for legitimate medical purposes.").

33.     To succeed on that theory, Plaintiff would have to show that the total quantity of prescription opioids that all pharmaceutical distributors distributed was excessive or unreasonable. But the total amount of prescription opioids distributed in any given year turns on annual aggregate production

quotas established by DEA. Specifically, DEA must "determine the total quantity of each basic class of controlled substance listed in Schedule I or II necessary to be manufactured during the following calendar year to provide for the estimated medical, scientific, research and industrial needs of the United States, for lawful export requirements, and for the establishment and maintenance of reserve stocks." 21 C.F.R. § 1303.11(a). In making this determination, DEA must consider "[p]rojected demand" for such substances. 21 C.F.R. § 1303.11(b). Thus, to show that the total quantity of prescription opioids that Distributor Defendants distributed was unreasonable, Plaintiff would have to show that the annual aggregate production quotas set by DEA, pursuant to a federal statute, were themselves unreasonable.

34.     The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

35.     *First*, Plaintiff's state law claims "allege[] that [Defendants] violated a duty supplied by federal law" and thus "necessarily raise[] a stated federal issue." *Commc'ns Mgmt. Servs., LLC v. Qwest Corp.*, 726 F. App'x 538, 540 (9th Cir. 2018) (quotations omitted); *N.C. by & through N.C. Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, where the vindication of a right under state law necessarily turns on some construction of federal law, the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (quotation and alteration omitted)); *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (state law claims "necessarily raise" a federal question because "the right to relief depends upon the construction or application of federal law."(quotations and citation omitted)); *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

36.     As pled, Plaintiff's claims against McKesson and the other Distributor Defendants require Plaintiff to establish that Distributor Defendants breached duties under federal law by failing to stop shipments of otherwise lawful orders of controlled substances into California.

37.     For instance, in pleading public nuisance, Plaintiff alleges that Distributor Defendants "caused substantial and unreasonable interference with Santa Ana and its residents' public rights" by "unlawfully and intentionally distribut[ing] opioids or caus[ing] opioids to be distributed within and without Santa Ana absent effective controls against diversion." Compl. ¶¶ 371-73. The "effective controls against diversion" that Distributor Defendants purportedly failed to implement consist of "monitor[ing] for suspicious orders, report[ing] suspicious orders, and/or stop[ping] shipment of suspicious orders." *Id.* ¶ 373. Similarly, in pleading negligence, Plaintiff contends that "Defendants breached their duties to exercise due care in the business of wholesale distribution of dangerous opioids by failing to monitor for, failing to report, and filling highly suspicious orders time and again." *Id.* ¶ 413. Likewise, Plaintiff's civil conspiracy claim turns on the allegation that Distributor Defendants "unlawfully failed to act to prevent diversion and failed to monitor for, report, and prevent suspicious orders of opioids," *id.* ¶ 444, and that "[by] intentionally refusing to report and halt suspicious orders of their prescription opioids, Defendants engaged in a fraudulent scheme," *id.* ¶ 450.

38.     As noted, the alleged duty to "halt" or avoid filling shipments of suspicious orders arises under the federal CSA. Thus, although plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiff here alleges violations of federal law as the basis for its state-law claims.[4] *See Commc'ns Mgmt. Servs.*, 726 F. App'x at 540 ("Plaintiffs' second claim alleges . . . that [Defendant] violated a duty supplied by federal law, and therefore the claim necessarily raise[s] a stated federal issue which is both actually disputed and substantial"); *Benjamin v. S.C. Elec. & Gas Co.*, 2016 WL 3180100, at *5 (D.S.C. June 8, 2016) ("While Plaintiffs' allegations of negligence appear on their

---

[4] Furthermore, it is not necessary for federal jurisdiction that McKesson establish that all of Plaintiff's counts against it raise a federal question. Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal-question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997). Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiff's remaining counts against McKesson and the other Distributor Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

face to not reference federal law, federal issues are cognizable as the source for the duty of care resulting from [the defendant's conduct].").

39.     Similarly, Plaintiff's claims that the Distributor Defendants shipped "excessive" quantities of prescription opioids into California and Santa Ana, Compl. ¶ 241, require Plaintiff to show that the aggregate production quotas set by DEA pursuant to a federal statute were unreasonable.

40.     In pleading negligence, Plaintiff claims that Distributor Defendants breached "a duty to exercise reasonable care" in the distribution of opioids, *id.* ¶ 407, "act[ing] with actual malice" and "a conscious disregard for the rights and safety of other persons," *id.* ¶ 419. As support, Plaintiff incorporates allegations that (i) "[e]ach Distributor Defendant knew or should have known that . . . *the amount of opioids* flowing to Santa Ana was far in excess of what could be consumed for medically necessary purposes," *id.* ¶ 231 (emphasis added); (ii) "Distributor Defendants were aware of widespread prescription opioid abuse in and around Santa Ana, but . . . nevertheless persisted in a pattern of distributing commonly abused and diverted opioids in geographic areas, *in such quantities*, and with such frequency that they knew or should have known these commonly abused controlled substances were not being prescribed and consumed for legitimate medical purposes," *id.* ¶ 238 (emphasis added); and (iii) "[t]he Distributor Defendants' intentional distribution of *excessive amounts* of prescription opioids showed an intentional or reckless disregard for the safety of Santa Ana and its residents," *id.* ¶ 241 (emphasis added).

41.     And in pleading civil conspiracy, Plaintiff alleges that "the Distributor Defendants worked together in an illicit enterprise" to "exponentially expand[] a market that the law intended to restrict." Compl. ¶ 342. Specifically, Plaintiff contends that Distributor Defendants "jointly agreed to disregard their statutory duties to identify, investigate, halt and report suspicious orders of opioids and diversion of their drugs into the illicit market *so that those orders would not result in a decrease, or prevent an increase in, the necessary quotas*." *Id.* ¶ 346 (emphasis added). As Plaintiff alleges, Distributor Defendants used this method to "maintain[]" "*artificially high quotas*" for prescription opioids. *Id.* ¶ 345 (emphasis added).

42.     But as noted, the annual aggregate production quotas for prescription opioids are established by DEA under 21 C.F.R. § 1303.11. The total amount of prescription opioids distributed by pharmaceutical distributors in any given year also turns on these aggregate quotas. Accordingly, to prevail on its negligence and civil conspiracy claims, respectively, Plaintiff would need to show that DEA's

aggregate production quotas, set pursuant to a federal statute, were "excessive," Compl. ¶ 241, or "artificially high," *id.* 345. Thus, Plaintiff's causes of action "necessarily turn[] on some construction of federal law." *Alcoa Power Generating, Inc.*, 853 F.3d at 146. In sum, the Complaint necessarily raises federal issues—namely, whether Distributor Defendants violated the CSA by failing to prevent or halt suspicious orders for prescription opioids, and whether compliance with production quotas set by DEA under the CSA was unreasonable.

43.     *Second*, these federal issues are "actually disputed" because the parties disagree as to the proper construction of the CSA, the scope of alleged duties arising under the CSA, and whether Distributor Defendants violated their duties that, as Plaintiff pleads them, arise only under the CSA. Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

44.     Third, the federal issues presented by Plaintiff's claims are "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260-62 (internal quotation and citation omitted). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.

45.     Plaintiff's theories of Distributor Defendants' liability necessarily require that a court determine the existence and scope of Distributor Defendants' obligations under federal law because regulation of controlled substances is first and foremost federal regulation. Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control." H.R. Rep. No. 1444, 91st. Cong., 2nd Sess. 1970, *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72 (emphasis added).

46.     Plaintiff's theories of Distributor Defendants' liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v.*

*Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the 'federal system as a whole.'" *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014). The CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801. Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *N.Y. ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 318 (2d Cir. 2016) (citation and quotation omitted); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question-the interpretation of" federal statute "over which the District Court properly exercised removal jurisdiction").

47.     Plaintiff's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action. In 2005, in *Grable*, the Supreme Court held that lack of a federal cause of action does *not* foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 316; *see also, e.g.*, *Indep. Living Ctr. of S. Cal., Inc. v. Kent*, 909 F.3d 272, 279 (9th Cir. 2018) (petition for mandamus brought under state law, alleging that California's Medicaid reimbursement rates violated the Medicaid Act, satisfied *Gunn* and *Grable* despite the lack of a federal right of action); *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1236–37 (10th Cir. 2006) (state law claims based on a dispute over the scope of rights under federal land-grant statute  satisfy *Grable* despite the lack of a private right of action); *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *4-*5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

48.     Removal is particularly appropriate here because Plaintiff's action is but one of more than 1,800 similar actions pending in the MDL in the Northern District of Ohio. Indeed, Plaintiff pleads that

both the "opioid epidemic" and the alleged improper distribution of prescription opioids by McKesson and other Distributor Defendants are "national" problems. *See, e.g.*, Compl. ¶¶ 63-69 (describing the effects of the "opioid epidemic" as a "serious *national* crisis that affects public health as well as social and economic welfare") (emphasis added); *id.* ¶ 264 (asserting that "Defendants' public nuisance is not limited to the local or state level, but is *national* in scope") (emphasis added).  The MDL judge, Judge Polster, is attempting to achieve a national solution to this nationwide problem.[5]

49.     *Fourth*, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court interpreting or applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA— interprets and applies them. Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

50.     In summary, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also Commc'ns Mgmt. Servs.*, 726 F. App'x at 540 (unjust enrichment claim alleging defendants failed to timely file a rate required by the FCC "necessarily raised a stated federal issue which [was] both actually disputed and substantial"); *EIJ, Inc. v. United Parcel Serv., Inc.*, 233 F. App'x 600, 601–02 (9th Cir. 2007) (breach of contract claim based in part on allegation that the plaintiff had received improper notice of an air carrier's liability limitation "[was] within the district court's 'arising under' federal law jurisdiction"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to

---

[5] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

relief necessarily depends on resolution of a substantial question of federal law.'" (citation omitted)); *Nicodemus v. Union Pac. Corp.,* 440 F.3d 1227, 1237 (10th Cir. 2006) (state law claims based on dispute over scope of rights under federal land grant statutes raise a "dispositive and contested federal issue" that satisfies *Grable*); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction").

51.     To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Manufacturer Defendants, Sackler Defendants, or Distributor Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

**V.     Other Removal Issues**

52.     Pursuant to 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served consent to removal.

53.     The following Defendants have been served in this action and consent to removal, as indicated by their counsel's signatures below: Purdue Pharma L.P.; Purdue Pharma Inc.; the Purdue Frederick Company Inc.; Cephalon, Inc.; Teva Pharmaceuticals USA, Inc.; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Actavis LLC; Watson Laboratories, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Allergan, Inc., Allergan USA, Inc.; Insys Therapeutics, Inc.; Mallinckrodt LLC; AmerisourceBergen Corporation[6]; Cardinal Health, Inc.

54.     For the following Defendants, service was not attempted; was not effected; was otherwise improper; or Defendants are still in the process of finalizing stipulations accepting service, thus their

---

[6] By consenting to this Notice of Removal, AmerisourceBergen Corporation does not concede that it is a proper party in this case.

consent to removal is not required: Beverly Sackler; David A. Sackler; Jonathan D. Sackler; Richard S. Sackler; and Beverly Sackler, Jonathan D. Sackler, and Richard S. Sackler, in their alleged capacity as trustees of the alleged "Trust for the Benefit of Members of the Raymond Sackler Family"; Ilene Sackler Lefcourt; Kathe A. Sackler; Mortimer D. A. Sackler; and Theresa Sackler; Teva Pharmaceutical Industries Ltd.;[7] Allergan plc f/k/a Actavis plc; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.;[8] Mallinckrodt plc.[9] Nevertheless, they consent to removal. The Defendants listed in this paragraph expressly reserve, and do not waive, all defenses, including defenses related to personal jurisdiction.

55. The Doe Defendants have not been identified, and on information and belief, have not been served. Thus, their consent to removal is not required.

56. By filing this Notice of Removal, neither McKesson nor any other Defendant waives any defense that may be available to them, and Defendants expressly reserve all such defenses, including those related to personal jurisdiction and service of process.

57. If any question arises as to propriety of removal to this Court, McKesson requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

58. Pursuant to 28 U.S.C. § 1446(d), McKesson will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff.

59. McKesson reserves the right to amend or further supplement this Notice.

---

[7] Teva Pharmaceutical Industries Ltd. ("Teva Ltd") is a foreign company and it is not subject to personal jurisdiction in the United States. Teva Ltd. expressly reserves all defenses, including those related to personal jurisdiction and service of process.

[8] Allergan plc f/k/a Actavis plc, an Irish corporation, and Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. dispute that they have been properly served but nevertheless consent to removal and expressly reserve all rights and defenses including those related to personal jurisdiction and service of process.

[9] Mallinckrodt plc, an Irish public limited company, has not been served, but joins this removal out of an abundance of caution, and expressly reserves all defenses, including those related to personal jurisdiction and service of process.

60.     WHEREFORE, McKesson removes this action from the Superior Court of the State of California for the County of San Francisco, Case No. CGC-19-574872, to this Court.

April 29, 2019

**COVINGTON & BURLING LLP**

By: */s/ Nathan E. Shafroth*
Nathan E. Shafroth
Attorneys for Defendant
MCKESSON CORPORATION

NOTICE OF REMOVAL

**CONSENT TO REMOVAL FROM OTHER DEFENDANTS**

April 29, 2019

**DECHERT LLP**

By: */s/ Jae Hong Lee*
Jae Hong Lee
One Bush Street, Suite 1600
San Francisco, CA 94104
(415) 262-4585
Jae.Lee@dechert.com

Mark Cheffo*
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
Mark.Cheffo@dechert.com

*\* denotes national counsel who will seek pro hac vice admission*

Attorneys for Defendant
PURDUE PHARMA L.P.; PURDUE PHARMA
INC.; THE PURDUE FREDERICK COMPANY
INC.

April 29, 2019

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ James F. Collie, IV*
James F. Collie, IV (Bar No. 192318)
MORGAN, LEWIS & BOCKIUS LLP
600 Anton Blvd., Ste. 1800
Costa Mesa, CA 92626
Telephone: (714) 830-0600
Facsimile: (714) 830-0700
collie.james@morganlewis.com

Steven A. Reed*
1701 Market Street
Philadelphia, PA 19103
T: 215.963.5000
F: 215.963.5001
steven.reed@morganlewis.com

Brian M. Ercole*
200 S. Biscayne Blvd., Suite 5300

Miami, FL 33131-2339
T: 305.415.3000
F: 305.415.3001
brian.ercole@morganlewis.com

*denotes national counsel who will seek pro hac vice admission*

Attorneys for Defendant
TEVA PHARMACEUTICALS USA, INC.;
TEVA PHARMACEUTICAL INDUSTRIES
LTD.; CEPHALON, INC.; WATSON
LABORATORIES, INC.; ACTAVIS LLC;
ACTAVIS PHARMA, INC. F/K/A WATSON
PHARMA, INC.

April 29, 2019      **O'MELVENY & MYERS LLP**

By: */s/ Charles C. Lifland*
Charles C. Lifland
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
clifland@omm.com

Attorneys for Defendant
JANSSEN PHARMACEUTICALS, INC.;
JOHNSON & JOHNSON; ORTHO-MCNEIL-
JANSSEN PHARMACEUTICALS, INC. N/K/A
JANSSEN PHARMACEUTICALS, INC.;
JANSSEN PHARMACEUTICA, INC. N/K/A
JANSSEN PHARMACEUTICALS, INC.

April 29, 2019      **ARNOLD & PORTER KAYE SCHOLER
LLP**

By: */s/ John Lombardo*
John Lombardo
Tiffany Ikeda
777 S. Figueroa Street, 44th Floor
Los Angeles, CA 90017
(213) 243-4000
John.Lombardo@arnoldporter.com
Tiffany.Ikeda@arnoldporter.com

Attorneys for Defendant
ENDO HEALTH SOLUTIONS INC.; ENDO
PHARMACEUTICALS INC.

April 29, 2019                    **KIRKLAND & ELLIS LLP**

By: */s/ Donna Welch*
Donna Welch, P.C.*
Martin L. Roth*
Timothy W. Knapp*
300 North LaSalle, Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
donna.welch@kirkland.com
rothm@kirkland.com
tknapp@kirkland.com

Jennifer G. Levy, P.C.*
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
jennifer.levy@kirkland.com

*\* denotes national counsel who will seek pro hac
vice admission*

Attorneys for Defendant
ALLERGAN, INC.; ALLERGAN USA, INC.

April 29, 2019                    **ROPES & GRAY LLP**

By: */s/ Rocky C. Tsai*
Rocky C. Tsai
Three Embarcadero Center
San Francisco, California 94111-4006
Telephone: (415) 315-6300
Fax: (415) 315-6350
Rocky.Tsai@ropesgray.com

Attorneys for Defendant
MALLINCKRODT LLC; MALLINCKRODT
PLC

April 29, 2019                    **INSYS THERAPEUTICS, INC.**

23

By: */s/ Robert Schwimmer*
Robert Schwimmer
Assistant General Counsel
1333 South Spectrum Blvd., Suite 100
Chandler, AZ 85286
Direct: (480) 765-2842
Cell: (602) 370-0343

April 29, 2019                                    **JOSEPH HAGE AARONSON LLC**

By: */s/ Gregory P. Joseph*
Gregory P. Joseph*
Mara Leventhal*
Douglas J. Pepe*
Peter R. Jerdee*
Christopher J. Stanley*
Gila S. Singer*
485 Lexington Avenue, 30th Floor
New York, NY 10017
(212) 407-1200
Fax: (212) 407-1299
gjoseph@jha.com
mleventhal@jha.com
dpepe@jha.com
pjerdee@jha.com
cstanley@jha.com
gsinger@jha.com

Attorneys for Defendant
BEVERLY SACKLER, DAVID A. SACKLER,
JONATHAN D. SACKLER, RICHARD S.
SACKLER, AND BEVERLY SACKLER,
JONATHAN D. SACKLER, and RICHARD S.
SACKLER, IN THEIR ALLEGED CAPACITY
AS TRUSTEES OF THE ALLEGED
"RAYMOND SACKLER TRUST"

April 29, 2019                                    **DEBEVOISE & PLIMPTON LLP**

By: */s/ Maura Kathleen Monaghan*
Maura Kathleen Monaghan*
Susan Reagan Gittes*
919 Third Avenue
New York, NY 10022
(212) 909-6000

24

Fax: (212) 521-8873
mkmonaghan@debevoise.com
srgittes@debevoise.com

*\* denotes national counsel who will seek pro hac vice admission*

Attorneys for Defendant
ILENE SACKLER-LEFCOURT, KATHE SACKLER, MORTIMER D.A. SACKLER AND THERESA SACKLER

April 29, 2019                    **BAKER & HOSTETLER LLP**

By: */s/ Teresa C. Chow*
Teresa C. Chow (SBN 237694)
11601 Wilshire Boulevard, Suite 1400
Los Angeles, California 90025-7120
Telephone: 310.820.8800
Facsimile: 310.820.8859
Email: tchow@bakerlaw.com

Attorneys for Defendant
CARDINAL HEALTH, INC.

April 29, 2019                    **REED SMITH LLP**

By: */s/ Steven J. Boranian*
Steven J. Boranian
Sarah B. Johansen
Adam Brownrout
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
T: 415.543.8700
F: 415.391.8269
sboranian@reedsmith.com
sjohansen@reedsmith.com
abrownrout@reedsmith.com

Attorneys for Defendant
AMERISOURCEBERGEN CORPORATION